CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com

Attorney for Plaintiff
Wicked Nevada, LLC

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| Wicked Nevada, LLC,<br><br>            Plaintiff,<br><br>  vs.<br><br>JOHN DOE dba YTS and<br>DOES 1-16<br><br>            Defendants. | **Case No.: 1:19-cv-413**<br>(Copyright)<br><br>**COMPLAINT; EXHIBITS 1-4;**<br>**DECLARATION OF STEPHANIE**<br>**KESSNER; DECLARATION OF**<br>**BENNY NG**<br><br>**(1) CONTRIBUTORY**<br>    **COPYRIGHT**<br>    **INFRINGEMENT**<br>**(2) INTENTIONAL**<br>    **INDUCEMENT**<br>**(3) DIRECT COPYRIGHT**<br>    **INFRINGEMENT** |

## COMPLAINT

Plaintiff Wicked Nevada, LLC. ("Plaintiff") file this Complaint against

Defendants JOHN DOE dba YTS and DOES 1-16 (sometimes referred to

collectively as "Defendants") and alleges as follows:

## I.     NATURE OF THE ACTION

1.      Plaintiff brings this action to stop the massive piracy of its motion picture *Extremely Wicked, Shockingly Evil and Vile* brought on by websites under the collective name YTS and their users.

2.      To halt Defendants' illegal activities, Plaintiff brings this action under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the Copyright Act") and alleges that Defendants are liable for inducement, and direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501.

## II.      JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., (the Copyright Act), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338 (patents, copyrights, trademarks, and unfair competition).

4.      Defendants solicit, transact, or are doing business within this jurisdiction, and have committed unlawful and tortious acts both within and outside this jurisdiction with the full knowledge that their acts would cause injury in this jurisdiction.

5.      Defendant JOHN DOE causes harm to Plaintiff's business within this District by diverting customers in this District to unauthorized Internet-based content distribution services through, at least, the interactive websites branded under the name "YTS", particularly yts.lt.

6.      Defendant JOHN DOE has designed its interactive websites to

2

20-019A

individually target Hawaii users based upon their personal information such as web browsing history.

7.     Upon information and belief, Defendant JOHN DOE solicits and collects registration information, log files including the Internet Protocol ("IP") address, Internet Service Provider ("ISP") and browser type of each user who visits its interactive websites.

8.     Upon information and belief, Defendant JOHN DOE uses cookies and web beacons to store information such as personal preferences of users who visit its websites.



9.     Upon information and belief, Defendant JOHN DOE obtains financial benefit from its users in Hawaii via third party advertisements such as Google through the Google AdSense program.

10.     Upon information and belief, Defendant JOHN DOE uses the cookies,

3

log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user.  Particularly, users in Hawaii receive advertisements based upon their location and websites they have previously visited.



11.    Particularly, Defendant JOHN DOE encourages its users to register an account with YTS to post comments, make requests for more pirated content and block the advertisements.

20-019A



12.     In the alternative, the Court has jurisdiction of Defendant JOHN DOE pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute, for at least the following reasons: (1) Plaintiff's claims arise under federal law; (2) the Defendant JOHN DOE purposely directed its electronic activity into the United States and targets and attracts a substantial number of users in the United States and, more particularly, this District; (3) Defendant JOHN DOE does so with the manifest intent of engaging in business or other interactions with the United States; (4) the Defendant JOHN DOE is not subject to jurisdiction in any state's courts of general jurisdiction; and (5) exercising jurisdiction is consistent with the United States Constitution and laws.

13.     Defendant JOHN DOE uses or has used many United States based sources for operating its interactive websites such as the Internet hosting and nameserver company Cloudflare, Inc. (California), the U.S. Internet Service

20-019A

Providers ("ISPs") AT&T, Verizon, and Charter Communications LLC dba Spectrum ("Spectrum"), the Internet server companies Digital Ocean, Inc. (New York), Level 3 Communications, Inc. (Colorado), Digital Management Partners, LLC dba GigeNET (Illinois), FDC Servers.Net LLC (Illinois), QuadraNet, Inc. (California), and Hurricane Electric Internet Services (California).  *See* Decl. of Stephanie Kessner at ¶20, Exhibit "1".

14.    Defendant JOHN DOE further uses the Virtual Private Network ("VPN") provider London Trust Media (Colorado) and even the Onion Router ("TOR") exit relays of the US Naval Research Labs in Washington, DC and an individual in Texas to conceal its login records to its Cloudflare account when operating the interactive websites.  *See* Redacted Decl. of Benny Ng at ¶¶2-4 [Redacted to protect privacy of said individual in Texas].

15.    Defendant JOHN DOE promotes overwhelmingly if not exclusively motion pictures produced by United States companies on its interactive websites.

16.    Defendant JOHN DOE promotes Plaintiff's motion picture prominently on the website https://yts.lt/movie/extremely-wicked-shockingly-evil-and-vile-2019 to attract new users.



17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) - (c) because: (a) all or a substantial part of the events or omissions giving rise to the claims occurred in this District; and (c)(3) any of the Defendants not a resident of the United States may be sued in this District.

### III.   PARTIES

#### A.   The Plaintiff

18.     The Plaintiff is a limited liability company registered under the laws of the State of Nevada. The Plaintiff has its principal offices in Los Angeles, California. The Plaintiff is an affiliate of Voltage Pictures, a production company with a notable catalog of major award-winning motion pictures, such as, for example, *Dallas Buyers Club*, by independent film makers. *See* www.voltage pictures.com.

7

20-019A

19.     Plaintiff is the owner of the copyright for the motion picture in the Work "*Extremely Wicked, Shockingly Evil, and Vile*", (hereafter: the "Work") a major motion picture released in May of 2019.

20.     The Work is about how a courtroom frenzy ensues and sweeps 1970s America when a young single mother reluctantly tips the attention of a widespread manhunt toward her longtime boyfriend, Ted Bundy.

## B.  The Defendants

21.     Defendant JOHN DOE operates an interactive website http://yts.lt (hereafter: "YTS website") which includes a library of torrent files for copyright protected motion pictures, including Plaintiff's.  The torrent files can be used by a BitTorrent client application to download motion pictures for free.   Upon information and belief, Defendant JOHN DOE previously operated the websites yts.ag and yts.am which all now redirect to the YTS website.

22.     Upon information and belief, the name YTS mentioned in Defendant JOHN DOE's YTS website is an abbreviation of YIFY Torrent Solutions.  The name YIFY is derived from the name Yiftach Swery, the founder of YIFY Torrent Solutions.

23.     Defendant JOHN DOE states on the YTS website, "Here you will be able to browse and download YIFY movies in excellent 720p, 1080p and 3D quality…"

20-019A



24.     The YTS website of Defendant JOHN DOE is considered one of the most popular torrent sites in world.   *See* https://torrentfreak.com/top-10-most-popular-torrent-sites-of-2019/ [last accessed on July 19, 2019].

25.     Defendant JOHN DOE creates the torrent files made available on the YTS websites.

26.     Upon information and belief, Defendant JOHN DOE uses a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services.

27.     Defendant JOHN DOE includes the words such as [YTS.AM] or [YTS.LT] or at least the wording YTS in the titles of each of the torrent files it creates in order to enhance its reputation for the quality of its torrent files and attract users to its interactive YTS website.

20-019A

28.    The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant JOHN DOE is unknown to Plaintiff who therefore sues said Defendant by a fictitious name.   Defendant JOHN DOE is known to the Plaintiff only by the website where it induces and contributes to infringements of Plaintiff's Work and the IP addresses at which it logged into or associated with the Cloudflare account for hosting the websites.   *See* Exhibit "1".

29.    As of July 19, 2019, the whois search records for the registrant of the YTS website (yts.lt) show registrant name of "TechModo Limited" at 85 Great Portland Street, First Floor, London W1W 7LT, in England.   *See* https://www.domreg.lt/en/services/whois/?search=yts.lt [Last Accessed on July 19, 2019.

20-019A

SEARCHING FOR THE DOMAIN IN WHOIS

| yts.lt | CHECK |

**Domain information**

| | |
|---|---|
| Domain | yts.lt |
| Status | Registered |
| Created | 2018-07-20 19:13:37 |
| Expires | 2019-07-21 23:59:59 |
| Updated | 2019-04-11 19:34:46 |

**Registrant information**

| | |
|---|---|
| Organization | TechModo Limited |
| Address | 85 Great Portland Street, First Floor, London, W1W 7LT, gb |
| Phone | +44.2071129167 |
| Email | 13bb5b1fccd2e60880654bd8fd2b6be7-8893542@contact.gandi.net |

**Technical contact**

| | |
|---|---|
| Organization | TechModo Limited |
| Address | 85 Great Portland Street, First Floor, London, W1W 7LT, gb |
| Email | 13bb5b1fccd2e60880654bd8fd2b6be7-8893542@contact.gandi.net |
| Phone | +44.2071129167 |

**Registrar**

| | |
|---|---|
| Organization | Gandi Sas |
| Website | http://www.gandi.net/ |
| Email | reg.lt-admin@gandi.net |

**DNS servers**

eric.ns.cloudflare.com
erin.ns.cloudflare.com

30.    The Company Techmodo Limited was declared dissolved by the Registrar of Companies for England and Wales on April 30, 2019.

20-019A

31.    Cloudflare, Inc. provides hosting and nameserver service for the interactive websites of Defendant JOHN DOE.

32.    Defendant JOHN DOE logged into its Cloudflare account from IP address      2600:1700:2800:2ed0:4d1f:c735:c1dc:220b      on      2019-03-26 23:25:30.060443 UTC.  Publicly available records show that this IP address belongs to AT&T.  Exhibit "1".

33.    Defendant JOHN DOE logged into its Cloudflare account from IP address  174.255.1.178  on  2019-05-24  01:51:58.780956+00  UTC.    Publicly available records show that this IP address belongs to Verizon Wireless.  Exhibit "1".

34.    Defendant JOHN DOE logged into its Cloudflare account from IP address      2600:1005:b160:eb5:6b76:fd7f:da7c:cb98      on      2018-12-15 02:08:41.871848+00 UTC.  Publicly available records show that this IP address belongs to Verizon Wireless.  Exhibit "1".

35.    Defendant JOHN DOE logged into its Cloudflare account from IP address  24.180.115.170  on  2019-05-24  07:49:32.335518+00  UTC.    Publicly available records show that this IP address belongs to Spectrum. Exhibit "1".

36.    Defendant JOHN DOE logged into its Cloudflare account from IP address      2604:6000:9f45:e800:a8b7:797:3bba:8333      on      2019-01-21 20:14:22.932249+00 and on   2019-03-16 22:09:48.879404+00 UTC.  Publicly

available records show that this IP address belongs to Spectrum.  Exhibit "1".

37.    Plaintiff intends to request that the Court allow early third party discovery of the ISPs in order to learn the identity of Defendant JOHN DOE.

38.    Upon information and belief, the Defendants DOES 1-16 are users of the interactive websites of Defendant JOHN DOE.

39.    Upon information and belief, one or more if not all of the Defendants DOES 1-16 have registered accounts with the interactive websites of Defendant JOHN DOE.

40.    The Defendants DOES 1-16 are members of a group of BitTorrent users or peers whose computers are collectively interconnected for the sharing of a particular unique file, otherwise known as a "swarm".   The particular file a BitTorrent swarm is associated with has a unique "hash" number, which in this case is: SHA1: 10142A7133B784BF295AAFABDDAAC53F90EA8C88 (the "Unique Hash Number").  The file name is "Extremely Wicked, Shockingly Evil, And Vile (2019) [WEBRip] [720p] [YTS.AM]".  Exhibit "2".

41.    Upon information and believe, Each of the Defendants DOES 1-16 received from Plaintiff's agent at least a first notice per 17 U.S.C. 512(a) of the Digital Millennium Copyright Act ("DMCA notice") requesting the individual to stop infringement of the Work or other Works via BitTorrent protocol.

42.    The ISPs Spectrum, Hawaiian Telcom and Verizon provide the

20-019A

Internet service for Defendants DOES 1-16. Plaintiff intends to subpoena the ISPs in order to learn the subscriber identities of Defendants DOES 1-16. Further discovery may be necessary in some circumstances in order to be certain of the identity of the proper Defendant. Plaintiff believes that information obtained in discovery will lead to the identification of each Defendant's true names and permit the Plaintiff to amend this Complaint to state the same. Plaintiff further believes that the information obtained in discovery may lead to the identification of additional infringing parties to be added to this Complaint as Defendants. Plaintiff will amend this Complaint to include the proper names and capacities when they have been determined. Plaintiff is informed and believes, and based thereon allege, that each of the fictitiously named Defendants participated in and are responsible for the acts described in this Complaint and damages resulting therefrom.

## IV.   JOINDER

43.    Pursuant to Fed. R. Civ. P. 20(a)(2), each of the Defendants was properly joined because, as set forth in more detail below, the Plaintiff asserts: (a) a right to relief arising out of the same transaction, occurrence, or series or transactions, namely (i) the distribution of the torrent file associated with Plaintiff's Work via the YTS website of Defendant JOHN DOE to Defendants DOES 1-16; (ii) the inducement by Defendant JOHN DOE of the direct infringements of Defendants DOES 1-16; and/or (iii) the infringement complained of herein by each of the

14

Defendants was part of a series of transactions over the course of a relatively short period of time, involving the exact same piece of the Plaintiff's copyrighted Work, and was accomplished by the Defendants acting in concert with each other; and (b) there are common questions of law and fact.

## V.   FACTUAL BACKGROUND

### A.  The Plaintiff Owns the Copyright to the Work

44.    The Plaintiff is the owner of the copyright in the Work.  The Work is the subject of a copyright registration, and this action is brought pursuant to 17 U.S.C. § 411.  *See* Exhibit "3".

45.    The Work is a motion picture currently offered for sale in commerce.

46.    Defendants had notice of Plaintiff's rights through at least the credits indicated in the content of the motion pictures which bore proper copyright notices. *See* Exhibit "4".

47.    Defendants also had notice of Plaintiff's rights through general publication and advertising associated with the motion picture, and packaging and copies, each of which bore a proper copyright notice.

### B. Defendants Used BitTorrent To Infringe the Plaintiff's Copyright

48.    BitTorrent is one of the most common peer-to-peer file sharing protocols (in other words, set of computer rules) used for distributing large amounts of data.

20-019A

49.     The BitTorrent protocol's popularity stems from its ability to distribute a large file without creating a heavy load on the source computer and network. In short, to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), the BitTorrent protocol allows users to join a "swarm" of host computers to download and upload from each other simultaneously (one computer connected to numerous computers).

### 1. Defendants DOES 1-16 installed a BitTorrent Client onto his or her Computer

50.     A BitTorrent Client is a software program that implements the BitTorrent Protocol.  There are numerous such software programs which can be directly downloaded from the Internet.

51.     Once installed on a computer, the BitTorrent Client serves as the user's interface during the process of uploading and downloading data using the BitTorrent protocol.

52.     Defendants DOES 1-16 installed a BitTorrent Client onto their respective computer.

### 2. The Initial Seed, Torrent, Hash and Tracker

53.     A BitTorrent user that wants to upload a new file, known as an "initial seeder," starts by creating a "torrent" descriptor file using, for example, the Client

16

he or she installed onto his or her computer.

54.     The Client takes the target computer file, the "initial seed," here the copyrighted Work, and divides it into identically sized groups of bits known as "pieces."

55.     The Client then gives each one of the computer file's pieces, in this case, pieces of the copyrighted Work, a random and unique alphanumeric identifier known as a "hash" and records these hash identifiers in the torrent file.

56.     When another peer later receives a particular piece, the hash identifier for that piece is compared to the hash identifier recorded in the torrent file for that piece to test that the piece is error-free. In this way, the hash identifier works like an electronic fingerprint to identify the source and origin of the piece and that the piece is authentic and uncorrupted.

57.     Torrent files also have an "announce" section, which specifies the URL (Uniform Resource Locator) of a "tracker," and an "info" section, containing (suggested) names for the files, their lengths, the piece length used, and the hash identifier for each piece, all of which are used by Clients on peer computers to verify the integrity of the data they receive.

58.     The "tracker" is a computer or set of computers that a torrent file specifies and to which the torrent file provides peers with the URL address(es).

59.     The tracker computer or computers direct a peer user's computer to

20-019A

other peer user's computers that have particular pieces of the file, here the copyrighted Work, on them and facilitates the exchange of data among the computers.

60.    Depending on the BitTorrent Client, a tracker can either be a dedicated computer (centralized tracking) or each peer can act as a tracker (decentralized tracking).

### 3. Torrent Sites

61.    "Torrent sites" are websites that index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol.  There are numerous torrent websites.

62.    Upon information and belief, Defendants went to a torrent site to upload and download Plaintiff's copyrighted Work.

63.    Upon information and belief, Defendants DOES 1-16 went to the torrent site YTS of Defendant JOHN DOE to download Plaintiff's copyrighted Work.

### 4. Uploading and Downloading a Work Through a BitTorrent Swarm

64.    Once the initial seeder has created a torrent and uploaded it onto one or more torrent sites, then other peers begin to download and upload the computer file to which the torrent is linked (here the copyrighted Work) using the BitTorrent protocol and BitTorrent Client that the peers installed on their computers.

20-019A

65.     The BitTorrent protocol causes the initial seeder's computer to send different pieces of the computer file, here the copyrighted Work, to the peers seeking to download the computer file.

66.     Once a peer receives a piece of the computer file, here a piece of the copyrighted Work, it starts transmitting that piece to the other peers.

67.     In this way, all of the peers and seeders are working together in what is called a "swarm."

68.     Here, Defendants participated in the same swarm and directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions.

69.     In this way, and by way of example only, one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Work here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Work to each of the peers. The recipient peers then automatically begin delivering the piece they just received to the other peers in the same swarm.

70.     Once a peer has downloaded the full file, the BitTorrent Client reassembles the pieces and the peer is able to view the movie. Also, once a peer has downloaded the full file, that peer becomes known as "an additional seed," because

20-019A

it continues to distribute the torrent file, here the copyrighted Work.

*5. The Plaintiff's Computer Investigator Identified the Defendants' IP Addresses as Participants in a Swarm That Was Distributing the Plaintiff's Copyrighted Work*

71.    The Plaintiff retained Maverickeye UG ("MEU") to identify the IP addresses that are being used by those people that are using the BitTorrent protocol and the Internet to reproduce, distribute, display or perform the Plaintiff's copyrighted Work.

72.    MEU used forensic software to enable the scanning of peer-to-peer networks for the presence of infringing transactions.

73.    MEU extracted the resulting data emanating from the investigation, reviewed the evidence logs, and isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number.

74.    The IP addresses, Unique Hash Number, and hit dates contained on Exhibit "2" accurately reflect what is contained in the evidence logs, and show that Defendants DOES 1-16 have copied a piece of the Plaintiff's copyrighted Work identified by the Unique Hash Number.

75.    The Defendants DOES 1-16's computers used the identified IP address to connect to the investigative server from a computer in this District in order to

20-019A

transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number.

76.     MEU's agent analyzed each BitTorrent "piece" distributed by the IP address listed on Exhibit 2 and verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of the Work.

77.     MEU's agent viewed the Works side-by-side with the digital media file that correlates to the Unique Hash Number and determined that they were identical, strikingly similar or substantially similar.

### C. Defendant JOHN DOE is the initial Seeder of the Work

78.     Defendant JOHN DOE was the initial seeder who copied the Work and created the torrent file "Extremely Wicked, Shockingly Evil, And Vile (2019) [WEBRip] [720p] [YTS.AM]".  Exhibit "2".

79.     Accordingly, Defendant JOHN DOE is the initial contributor and create of the Swarm identified by the Unique Hash Number.

80.     Defendant JOHN DOE does not have a license from Plaintiff to copy Plaintiff's Work.

### D. Defendant JOHN DOE distributes the torrent file of the Work

81.     Defendant JOHN DOE has made the torrent file "Extremely Wicked, Shockingly Evil, And Vile (2019) [WEBRip] [720p] [YTS.AM]" available to users in Hawaii such as Defendants DOES 1-16, the United States and the entire World

20-019A

to download from its interactive YTS website.

82.     Indeed, according to Defendant JOHN DOE's website, the Work has been downloaded over 276,000 times since July 31, 2019 from Defendant's website.

83.     Defendant JOHN DOE does not have a license from Plaintiff to distribute copies of Plaintiff's Work.

### E. Defendant JOHN DOE induces infringements of the Work

84.     Users of the Defendant JOHN DOE's interactive website use the website for its intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiff's Copyrighted Work.

85.     Defendant JOHN DOE promotes its website for overwhelmingly, if not exclusively, infringing purposes, and that is how the users use the websites.

86.     The commercial value of Defendant JOHN DOE's website depends on high-volume use of unauthorized content through the website. Defendant JOHN DOE promises its users reliable and convenient access to all the content they can watch and users visit the websites based on Defendant JOHN DOE's apparent success in delivering infringing content to its customers.

### VI. FIRST CLAIM FOR RELIEF
### (Intentional Inducement – Against Defendant JOHN DOE)

87.     Plaintiff re-alleges and incorporates by reference the allegations

20-019A

contained in each of the foregoing paragraphs.

88.    Plaintiff is the copyright owner of the Work which contains an original work of authorship.

89.    Defendant JOHN DOE has actual knowledge of third parties' infringement of Plaintiff's exclusive rights under the Copyright Act.

90.    Defendant JOHN DOE intentionally induced the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to publicly distribute copies of Copyrighted Work.

91.    As intended and encouraged by Defendant JOHN DOE, the website provides torrent files that connect users to Torrent sources and/or sites that deliver copies of Plaintiff's Copyrighted Work.  The operators of these Torrent sources directly infringe Plaintiff's exclusive rights by providing unauthorized copies of the work to the public, including to users of Defendant JOHN DOE's website.

92.    Once the user of Defendant JOHN DOE's website has obtained a complete copy of the Plaintiff's Copyrighted Work, that particular user also becomes another Torrent source that delivers copies of Plaintiff's Copyrighted Work.

93.    Defendant JOHN DOE induces the aforementioned acts of infringement by supplying the torrent file that facilitates, enables, and creates direct links between its users and the infringing Torrent source, and by actively inducing, encouraging and promoting the use of the website for blatant copyright infringement.

20-019A

94.     Defendant JOHN DOE's intentional inducement of the infringement of Plaintiff's rights in its Copyrighted Work constitutes a separate and distinct act of infringement.

95.     Defendants JOHN DOE's inducement of the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

96.     Defendant JOHN DOE's actions are a direct and proximate cause of the infringements of Plaintiff's Work.

### VII. SECOND CLAIM FOR RELIEF
### (Contributory Copyright Infringement based upon Material Contribution – Against Defendant JOHN DOE)

97.     Plaintiff re-allege and incorporate by reference the allegations contained in each of the foregoing paragraphs.

98.     Defendant JOHN DOE has actual or constructive knowledge of infringement of Plaintiff's exclusive rights under the Copyright Act.  Defendants JOHN DOE knowingly and materially contributes to such infringing activity.

99.     Defendant JOHN DOE knowingly and materially contributes to the infringement of Plaintiff's exclusive rights under the Copyright Act, including infringement of Plaintiff's exclusive right to distribute the Work. Defendant JOHN DOE designs and promotes the use of the YTS website to provide torrent files that connect customers to unauthorized online torrent sources to download copies of

20-019A

Plaintiff's Copyrighted Work. The operators of these torrent sources directly infringe Plaintiff's distribution rights by providing copies of the Work to the public, including to YTS website users. The operators, or others operating in concert with them, control the facilities and equipment used to store and deliver copies of the content, and they actively and directly cause the content to be distributed when users run the torrent file obtained from the YTS website.

100.   Defendant JOHN DOE knowingly and materially contributes to the aforementioned acts of infringement by supplying the website that facilitates, encourages, enables, and creates direct links between website users and infringing operators of the Torrent services, and by actively encouraging, promoting, and contributing to the use of the website for blatant copyright infringement.

101.   Defendants JOHN DOE's knowing and material contribution to the infringement of Plaintiff's rights in the Copyrighted Work constitutes a separate and distinct act of infringement.

102.   Defendant JOHN DOE's knowing and material contribution to the infringement of Plaintiff's Copyrighted Work is willful, intentional, and purposeful, and in disregard of and with indifference to the rights of Plaintiff.

103.   As a direct and proximate result of the infringement to which Defendant JOHN DOE knowingly and materially contributes, Plaintiff is entitled to damages and Defendant JOHN DOE's profits in amounts to be proven at trial.

20-019A

104.   Defendant JOHN DOE obtained a direct financial interest, financial advantage, and/or economic consideration from the infringements in Hawaii as a result of their infringing actions in the United States.

## VIII. THIRD CLAIM FOR RELIEF
### (Contributory Copyright Infringement against all Defendants based upon participation in the BitTorrent Swarm)

105.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

106.   By participating in the BitTorrent swarm with others, Defendants induced, caused or materially contributed to the infringing conduct of others.

107.   Plaintiff did not authorize, permit, or provide consent to the Defendants inducing, causing, or materially contributing to the infringing conduct of others.

108.   Defendants knew or should have known that the other BitTorrent users in a swarm with it were directly infringing the Plaintiff's copyrighted Work by copying constituent elements of the registered Work that are original.   Indeed, Defendants directly participated in and therefore materially contributed to others' infringing activities.

109.   The Defendants' infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

110.   By engaging in the contributory infringement alleged in this

26

20-019A

Complaint, the Defendants deprived not only the producer of the Work from income that could have been derived when this film was shown in public theaters and offered for sale or rental, but also all persons involved in the production and marketing of this film, numerous owners of local theaters and retail outlets in Hawai'i and their employees, and, ultimately, the local economy. The Defendants' misconduct therefore offends public policy.

111.   The Plaintiff has suffered damages that were proximately caused by the Defendants' contributory copyright infringement including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## IX. FOURTH CLAIM FOR RELIEF
### (Direct Copyright Infringement against all Defendants)

112.   Plaintiff re-alleges and incorporates by reference the allegations contained in each of the foregoing paragraphs.

113.   Plaintiff is the copyright owner of the Work which contains an original work of authorship.

114.   Defendant JOHN DOE copied the constituent elements of the Work when creating the torrent file.

115.   Defendant DOES 1-16 copied the constituent elements of the Work.

116.   Plaintiff did not authorize, permit, or provide consent to Defendants to copy, reproduce, redistribute, perform, or display the Work.

117.   As a result of the foregoing, Defendants violated the Plaintiff's

20-019A

exclusive right to: (A) Reproduce the Work in copies, in violation of 17 U.S.C. §§ 106(1) and 501; (B) Redistribute copies of the Work to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501; (C) Perform the copyrighted Work, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Work's images; and, (D) Display the copyrighted Work, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work non-sequentially and transmitting said display of the Work by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display.)

118.   Each of the Defendants' infringements was committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2).

119.   The Plaintiff has suffered damages that were proximately caused by each of the Defendants' copyright infringements including, but not limited to lost sales, price erosion, and a diminution of the value of its copyright.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

(A) enter temporary, preliminary and permanent injunctions enjoining each Defendant from continuing to directly infringe and contribute to infringement of the Plaintiff's copyrighted Work;

(B) Entry of an Order pursuant to 17 U.S.C. §512(j) and/or 28 U.S.C §1651(a)

20-019A

that, Cloudflare and any other service provider cease providing service for the website: (i) yts.lt; and (iii) any mirror websites in concert with yts.lt such as, but not limited to yts.am and yts.ag, immediately cease said service;

(C) that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their administrators that are provided with notice of the injunction, cease facilitating access to any or all domain names and websites through which Defendant JOHN DOE engages in the aforementioned infringements;

(D) award the Plaintiff's actual damages and Defendants' profits in such amount as may be found; alternatively, at Plaintiff's election, for maximum statutory damages per Work pursuant to 17 U.S.C. § 504-(a) and (c);

(E) award the Plaintiff its reasonable attorneys' fees and costs pursuant to 17 U.S.C. § 505; and

(F) grant the Plaintiff any and all other and further relief that this Court deems just and proper.

The Plaintiff hereby demands a trial by jury on all issues properly triable by jury.

DATED: Kailua-Kona, Hawaii, August 1, 2019.

20-019A

CULPEPPER IP, LLLC


/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiff
Wicked Nevada, LLC